IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JATIA NICOLE CARROLL  \*

v.  \*  Civil Case No. RDB-17-1896

COMMISSIONER, SOCIAL SECURITY  \*

\*\*\*\*\*\*\*\*\*\*\*\*\*

REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-referenced case has been referred to me for review of the Commissioner's dispositive motion, [ECF No. 15], and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). The Plaintiff Jatia Nicole Carroll, who proceeds *pro se,* filed a letter regarding her case in November, 2017, but did not file a response to the Commissioner's Motion for Summary Judgment.[1] I have considered Ms. Carroll's letter and the Commissioner's Motion. [ECF Nos. 14, 15]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Carroll filed claims for Disability Insurance Benefits ("DIB") on March 14, 2013, and Supplemental Security Income ("SSI") on August 28, 2013, alleging a disability onset date of November 14, 2010. (Tr. 225-35). Her claims were denied initially and on reconsideration.

---

[1] After the Commissioner filed her Motion for Summary Judgment on January 17, 2018, [ECF No. 15], a Rule 12/56 letter was mailed to Ms. Carroll, advising her of the potential consequences of failure to oppose the Commissioner's motion. [ECF No. 16]. The letter was returned as undeliverable, but, after Ms. Carroll filed a notice of change of address, the letter was re-mailed on February 12, 2018. [ECF Nos. 17, 18]. Still, Ms. Carroll did not file a response to the Commissioner's motion.

(Tr. 111-37, 141-44). A hearing, at which Ms. Carroll was represented by counsel, was held on August 13, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 39-69). At that proceeding, the ALJ decided to hold open the record to obtain additional medical records and to order a psychiatric consultative examination. (Tr. 66-68). After those items were procured, on April 6, 2016, a second hearing was held before a new ALJ, since the original ALJ had then left the office. (Tr. 70-110). Ms. Carroll was again represented by counsel. *Id.* Following the hearing, the ALJ determined that Ms. Carroll was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-28). The Appeals Council denied Ms. Carroll's request for review, (Tr. 1-5), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Carroll suffered from the severe impairments of "asthma; major depressive disorder; bipolar disorder with psychotic features; and anxiety disorder." (Tr. 15). Despite these impairments, the ALJ determined that Ms. Carroll retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day; can have no concentrated exposure to dust, odors, fumes, or pulmonary irritants; occasional exposure to weather, extreme cold or heat, and humidity and wetness; is limited to performing simple, routine, repetitive tasks, but not those done at a production rate pace, as in an assembly line where each task must be completed within a fixed time; is limited to making simple work related decisions, with only occasional changes in the routine work setting; can have occasional interaction with supervisors, coworkers, and the public; and time off task can be accommodated by normal breaks.

(Tr. 18). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Carroll could perform several jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 26-27).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). I have also considered all of the arguments raised by Ms. Carroll's prior attorney in his August 16, 2016 letter to the Appeals Council. (Tr. 342-43). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ proceeded in accordance with applicable law at all five steps of the sequential evaluation. The ALJ ruled in Ms. Carroll's favor at step one and determined that she had not engaged in substantial gainful activity since her alleged onset date. (Tr. 15); *see* 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ then considered the severity of each of the impairments that Ms. Carroll claimed prevented her from working. *See* 20 C.F.R. § 416.920(a)(4)(ii). Notably, the ALJ found that Ms. Carroll's iron deficiency anemia and "cannabis abuse, unspecified" were non-severe, because the medical evidence did not support a finding that those impairments would cause more than a minimal limitation on her ability to work. (Tr. 15-16). However, after finding several of Ms. Carroll's impairments to be severe, *id.*, the ALJ continued with the sequential evaluation and considered, in assessing Ms. Carroll's RFC, the extent to which all of her impairments limited her ability to work.

At step three, the ALJ determined that Ms. Carroll's severe impairments did not meet, or medically equal, the criteria of any listings. (Tr. 16-18). In particular, the ALJ considered the specific requirements of Listing 3.03 (asthma), Listing 12.04 (affective disorders), and Listing

3

12.06 (anxiety related disorders). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 3.03, 12.04, 12.06. For Listing 3.03, the ALJ noted no evidence of the frequency of asthmatic attacks required to satisfy the listing. (Tr. 16). For the two mental health listings, the ALJ concluded that Ms. Carroll had mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence, or pace, and no episodes of decompensation of extended duration, given that none of her three hospitalizations have lasted two weeks or longer. (Tr. 16-17). The ALJ supported those assessments with citations to the evidence of record. *Id.* Under each of the two mental health listings, a claimant would need to show at least two areas of marked difficulty, or repeated episodes of decompensation, to meet the listing criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. Accordingly, the ALJ did not err in his conclusion that the listings were not met.

In considering Ms. Carroll's RFC, the ALJ summarized her subjective complaints from her hearing testimony. (Tr. 19). The ALJ then engaged in a detailed review of Ms. Carroll's medical records and testing. (Tr. 19-21). Regarding asthma, the ALJ noted that Ms. Carroll had experienced "primarily routine and conservative" treatment, had some periods without any asthma activity, and continued to smoke cigarettes during at least part of the period in question. (Tr. 21). The ALJ further noted that Ms. Carroll's only asthma-related hospitalization was "in the context of the flu and pregnancy." *Id.* Accordingly, and in light of Ms. Carroll's activities of daily living including caring for a small child with special needs without assistance, the ALJ discounted the opinion of Ms. Carroll's treating pulmonologist, Dr. Pygros, who opined that Ms. Carroll's asthma caused frequent and incapacitating limitations. (Tr. 22-23).

Turning to the mental impairments, the ALJ again summarized the medical treatment and noted the significant improvement of symptoms when Ms. Carroll consistently took her

prescribed medication. (Tr. 20-22). The ALJ noted that, prior to each of Ms. Carroll's mental health-related hospitalizations, she was not taking any psychotropic medications, but her condition improved each time with treatment. (Tr. 22).

The ALJ then reviewed Ms. Carroll's self-reported activities of daily living, which include caring for her two small children, including one with special needs who does not attend daycare or school. *Id.* The ALJ also evaluated the opinion evidence pertaining to Ms. Carroll's medical condition, assigning only "little weight" to the opinions of the non-examining State agency physicians who believed there was either insufficient evidence to evaluate the claim or a non-severe mental impairment. (Tr. 25). The ALJ afforded "some weight" to the opinion rendered by the consultative psychological examiner, Dr. Phillips, although the ALJ concluded that the record as a whole did not substantiate the degree of concentration issues Dr. Phillips found. *Id.* The ALJ assigned "partial weight" to the August 10, 2015 opinion of a treating physician, Dr. Ahon, finding that most of his opinion comported with the record. (Tr. 24-25). However, the ALJ found that Dr. Ahon's suggestions that Ms. Carroll had a marked limitation in ability to perform at a consistent pace with regular breaks and would be absent two times per month were at odds with the record suggesting that Ms. Carroll's symptoms could be controlled with medication. (Tr. 25). Finally, the ALJ assigned "little weight" to the opinions from another treating physician, Dr. Millam, whose opinions describing significant limitations were contradicted by Ms. Carroll's activities of daily living and Dr. Millam's own treatment notes. (Tr. 24). A later opinion from Dr. Millam that Ms. Carroll would be temporarily incapacitated by mental health symptoms from May 22, 2014 to July 31, 2014 was also assigned little weight, since disability is an issue reserved to the Commissioner and Dr. Millam's note only established a limitation less than twelve months in duration. *Id.*

5

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971). Even if there is other evidence that may support Ms. Carroll's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In considering the entire record, and given the evidence outlined above, I find the ALJ's RFC determination was supported by substantial evidence.

Next, the ALJ determined that Ms. Carroll had past relevant work as a mail handler, but that she would be unable to perform that work based on her RFC. (Tr. 26). Accordingly, the ALJ proceeded to step five, where he considered the impact of Ms. Carroll's age, level of education, and RFC on her ability to adjust to new work. (Tr. 26-27). In doing so, the ALJ cited the VE's testimony that a person with Ms. Carroll's RFC would be capable of performing the jobs of "mail sorter, non-government," "sorter," and "housekeeper." (Tr. 27). Based on the VE's testimony, the ALJ concluded that Ms. Carroll was capable of successfully adjusting to other jobs that exist in significant numbers in the national economy. *Id.* Ms. Carroll's prior attorney argued that the ALJ posed a flawed hypothetical question to the VE, because the RFC did not adequately account for Ms. Carroll's moderate limitations in concentration, persistence or pace. (Tr. 342) (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015)). However, the ALJ included a restriction to work that is not "done at a production rate pace, as in an assembly line where each task must be completed within a fixed time." (Tr. 18). This Court has repeatedly held that such a restriction satisfies the requirement in *Mascio*. *See, e.g.*, *Reinhardt v. Comm'r, Soc. Sec. Admin.,* Civil No. SAG-16-3227, 2017 WL 2274948, at *2 (D. Md. May 24, 2017); *Davis v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-2699, 2016 WL 3814929, at *2 (D. Md.

July 12, 2016); *Raeke v. Comm'r, Soc. Sec.*, Civil No. GLR-15-1726, 2016 WL 892856, at *3 (D. Md. Mar. 9, 2016). Accordingly, the hypothetical was proper, and the ALJ's reliance on the VE's testimony constitutes substantial evidence supporting his conclusion.

I note that, in the letter she submitted to the Court, Ms. Carroll provided a report from her clinical therapist dated August 8, 2017, which suggests that she would be unable to work between August, 2017 and August, 2018. [ECF No. 14 at 2]. In the context of this appeal, this Court cannot consider evidence that was not presented before the Commissioner, except under very limited circumstances where the evidence is both new and material. *See Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996). The report Ms. Carroll now submits is new, but to establish that the evidence is material, Ms. Carroll would have to show that the evidence might reasonably have changed the decision of the Commissioner. *See Wilkins v. Sec'y, Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); 42 U.S.C. § 405(g). Here, the Commissioner's decision was rendered in May of 2016, and the newly submitted evidence discusses Ms. Carroll's mental state more than one year later, in August of 2017. [ECF No. 14 at 2]. Accordingly, the new evidence does not have any relevance to the time pre-dating the ALJ's opinion, and cannot be deemed material. The evidence would only be relevant to the Commissioner's consideration of a subsequent application for benefits.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 15]; and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated: March 12, 2018                                /s/
                                          Stephanie A. Gallagher
                                          United States Magistrate Judge